■ SHIRLEY SCHWARTZ, as Administratrix of the Estate of ESTHER SCHWARTZ, Deceased, Respondent, v MAIMONIDES HOSPITAL CENTER, Appellant.—In a negligence action to recover damages for personal injuries, defendant appeals from an interlocutory judgment of the Supreme Court, Kings County, entered October 31, 1974, in favor of plaintiff following a trial as to the issue of liability only, upon a jury verdict. Judgment affirmed, with costs. No opinion. Hopkins, Acting P. J., Latham, Christ and Brennan, JJ., concur; Shapiro, J., dissents and votes to reverse the judgment and grant a new trial, with the following memorandum: I believe that, by reason of substantial errors committed by the trial court, the jury verdict finding liability on the part of defendant, in this negligence action, cannot stand. Since plaintiff has had a verdict, I shall state the facts in a view most favorable to her *(Delaney v Town of Orangetown,* 44 AD2d 396, 397, affd 36 NY2d 770). The plaintiff administratrix and her sister, now deceased, but not as a result of the accident here in issue, were tenants in an apartment building owned by defendant. On September 7, 1968, at about 8:30 in the evening, the decedent caught her foot in a crack in the front steps of the building, as a result of which she sustained a broken hip. The crack had been there for about a year and a half and was about two inches wide and two inches deep. The two light fixtures at the entrance were not lit at the time. Both plaintiff and the decedent had complained about this condition and about the two fixtures outside the building, which were never lit because they lacked bulbs. Plaintiff testified that the lighting fixtures were always in working order before defendant became the owner of the building but that they became inoperative shortly thereafter. The defense witnesses generally disputed plaintiff's proof, but it is unnecessary to discuss their denials. We therefore come to what I consider to be the crucial errors committed upon the trial which necessitate a reversal of the interlocutory judgment. (1) Over repeated objection, defendant's managing agent was permitted to be questioned on cross-examination as to whether, when he took over management of the buildings on the block, including the one here in question, one of his jobs was to vacate them and thereafter have them torn down. His answer was "yes". He was also questioned as to whether he had served dispossess notices upon plaintiff, her sister and all of the other tenants in the building prior to the accident. Again, his answer was in the affirmative. He was also, over objection, permitted to state that he told the tenants in the building, including plaintiff and her sister, that they would have to vacate the premises. This testimony was received, apparently on the theory that a landlord who wanted his tenants out of the building for the purpose of demolishing it would not keep it in repair. Defendant argues that "this line of questioning was completely irrelevant to any legitimate issue in the case" (brief, p 19). I agree. The sole purpose of such testimony was to

lead the jury to infer that a landlord who wanted his tenants out of the building for the purpose of demolishing it would not keep the building in proper repair. The allowance of that proof for the purpose of drawing such a speculative inference, which went to the heart of the dispute between the parties, to wit, the condition of the walk and the lights, was highly prejudicial to defendant and, in and of itself, compels a reversal. (2) Defendant called a Dr. Samuels, who had treated plaintiff's sister for the fractured hip she sustained in the accident. When questioned by the court as to his purpose in calling the doctor, since the trial was limited to the issue of liability only, defendant's counsel said that he wanted to establish that the deceased had a serious heart condition and other physical ailments, the symptoms of which would include fainting, dizziness, headaches, possible blackouts and the like, that she had widespread multiple myeloma which extended to and included the spine and hip as well as other portions of her body, and that these conditions, joined with her age of 65, would have affected her ability to walk, and were a possible cause of the accident and injury. Despite this specific offer of proof and counsel's clear statement that he was calling the doctor, not on the question of damages but solely on the issue of causation, because the doctor "knows certain things of how the accident happened on the basis of the hospital record", the Trial Judge sustained plaintiff's objection to the proffered evidence. This was clear error. One of the questions to be decided by the jury was whether the decedent caught her foot in the crack, as her sister testified, or whether she fell, by reason of her ill health, at a place where, according to defendant's witness, there was no crack *(Petersen v Forty-Five Nevins St. Corp.,* 36 Misc 2d 178, mod 22 AD2d 960, affd 17 NY2d 885). (3) The only eyewitness to the occurrence was plaintiff. Clearly, therefore, the jury, in judging her credibility, was entitled to know whether she had a financial interest in the outcome of the case. With that end in view, defendant's counsel sought to interrogate her as to whether she was the only one who would benefit by a recovery, since her sister had died intestate and plaintiff was the only surviving relative. The court erroneously barred this line of inquiry. However, one's personal interest in the result of a case is always open to inquiry (Richardson, Evidence [Prince, 10th ed], pp 490–492). This error was not wholly cured by the court's charge that plaintiff would "share" in any recovery. The differing effects of plaintiff's possible minuscule "share" of a recovery and her right to the whole recovery could well lead to differing inferences by the jury as to her credibility. Since we are here dealing with the only eyewitness to the accident, the limitation imposed by the trial court on the cross-examination of plaintiff was crucial error. (4) The trial court's charge with reference to the interest of defendant's witnesses in the outcome of the case was improper *(Coleman v New York City Tr. Auth.,* 41 AD2d 812). While that error, standing alone, would not be sufficient to warrant a reversal, when taken in conjunction with the other errors, and particularly when juxtaposed with the court's charge as to plaintiff's interest, it assumes a higher degree of importance. In view of the foregoing cumulative errors a new trial is required, without reference to other errors committed upon the trial. I should like to point out, however, that the trial court's admonition to counsel that he would not permit interruption of the opening statements or of the summations, and that any objections thereto should be recorded afterward, directly contravened counsels' duty and obligation to object when and if improper statements were made; they should not have been precluded from so doing *(Samuel v Porchia,* 40 AD2d 697; *People v Marcelin,* 23 AD2d 368, 370; *Layton Sales & Rentals v Somat*

*Realty Corp.,* 39 AD2d 640; *Rice v Ninacs,* 34 AD2d 388; *Cattano v Metropolitan St. Ry. Co.,* 173 NY 565, 572). For all of the foregoing reasons, I vote to reverse the interlocutory judgment and to grant a new trial.